THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CELESTE SANTANA-ARCHIVALD, **Plaintiff,** v. BANCO POPULAR DE PUERTO RICO, **Defendant.** | CIVIL NO. 11-1627(JAG) |

OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is defendant Banco Popular de Puerto Rico's ("BPPR") motion to dismiss. (Docket No. 7). Plaintiff Celeste Santana-Archivald ("Santana") timely opposed. For the reasons that follow, defendant's motion is DENIED, and the matter is referred to a magistrate judge for a hearing.

BACKGROUND

In 1991, plaintiff Santana acquired a property in San Juan, Puerto Rico and financed the purchase through a loan obtained from EMI Equity Mortgage, Inc. (Docket 1 ("Compl.") at ¶ 9). The loan was secured by a mortgage on the property. The complaint states that this mortgage was later acquired by defendant BPPR. (Compl. at ¶ 10).

In 1994, Santana was called into active duty as a naval officer of the United States Navy Reserve. (Compl. at ¶ 12). Santana completed tours of duty in Afghanistan, South and Central America, and Haiti. (Compl. at 13). Her active-duty status lasted until January 1, 2011, when the Navy gave plaintiff an honorable but involuntary discharge. (Compl. at ¶ 15).[1] Santana is currently disputing this determination through the Board of Corrections of Naval Records. According to plaintiff, a ruling in her favor would allow her to return to active service. However, she would have to return approximately one hundred thousand dollars received as severance for her involuntary discharge. (Compl. at ¶ 16). Since her discharge, Santana has been unemployed and has had to dip into her savings to make ends meet. According to the complaint, Santana's unemployment, medical, and disability benefits have already expired.

In response to her dire financial situation, Santana asked BPPR for a modification of the terms of her loan. However, BPPR refused on grounds that Santana was unemployed. (Compl. at ¶ 24). Furthermore, plaintiff alleges that the bank refused to adjust the interest rate on her loan to the statutory 6%

---

[1] The complaint states that Santana served seventeen years and one month of active service, and more than seven years of "inactive service due to 'non-selection, permanent promotion." (Compl. at ¶ 15).

maximum, pursuant to Section 207 of the SCRA. 50 App. U.S.C. § 527(a)(1). Allegedly, the bank only applied the statutory maximum rate from August 2008 onwards. However, the bank "charged Santana an annual interest rate of six percent between 1994 and August 2008…" (Compl. at ¶ 40).

On June 30, 2011, plaintiff brought suit against BPPR seeking relief from her mortgage obligations pursuant to the Servicemembers Civil Relief Act, 50 App. U.S.C. § 501, *et seq* ("SRCA"). (Docket No. 1 ("Compl.")). Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that the complaint fails to state a claim upon which relief may be granted.

**STANDARD OF LAW**

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. To overcome a Rule 12(b)(6) motion, the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).

In Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit distilled from Twombly and Iqbal a two-

pronged test designed to measure the sufficiency of a complaint. First, the reviewing court must identify and disregard "statements in the complaint that merely offer legal conclusions couched as fact, or threadbare recitals of the elements of a cause of action." Ocasio-Hernández, 640 F.3d at 12 (internal punctuation omitted). In this analysis, the remaining non-conclusory factual allegations must be taken as true, even if they are "seemingly incredible," or that "actual proof of those facts is improbable." Id. Finally, the court assesses whether the facts taken as a whole "state a plausible, not merely a conceivable, case for relief." Id.

In conducting this test, a court must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. Ocasio-Hernández, 640 F.3d at 12. Thus, "[t]he relevant inquiry forces on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint." Id. at 13.

## ANALYSIS

The Servicemembers Civil Relief Act of 2003 is the latest in a series of statutes aimed at helping servicemembers "devote their entire energy to the defense needs of the Nation." 50 App. U.S.C. § 501(1). The Act must be liberally construed in favor of those "who dropped their affairs to answer their country's

call." Boone v. Lightner, 319 U.S. 561, 575 (1943). This protection extends to all military personnel on active duty, including career servicemen and women. Conroy v. Aniskoff, 507 U.S. 511 (1993).

Anticipatory Relief and Interest Rate Cap

Invoking the SRCA, plaintiff petitions the Court for anticipatory relief pursuant to 50 U.S.C. app. § 591. This section allows a servicemember to apply for relief "from any obligation or liability incurred by the servicemember before the servicemember's military service." Id. at § 591(a)(1). The particular relief sought by plaintiff is a stay of the enforcement of a real estate contract, pursuant to § 591(b)(1). A stay granted under this section would effectively extend the term of the loan, affording Santana with additional time to comply with her contractual obligations.

Plaintiff also seeks the application of the maximum interest rate to her loan for the period starting in 1994 and ending in August 2008. 50 U.S.C. app. § 527. This provision caps the interest payable on the servicemember's debts at a rate of 6% per year. With respect to mortgages, the rate ceiling applies "during the period of military service and one year thereafter." Id. at § 527(a)(1)(A). Any interest charged in excess of this cap is forgiven. Id. at § 527(a)(2). Once the servicemember

provides written notice and a copy of the orders calling the servicemember into active duty to the creditor, the interest rate cap applies retroactively and is "effective as of the date on which the servicemember is called to military service." <u>Id.</u> at § 527(b)(2).

Defendant disputes that Santana's financial troubles were caused as a consequence of her military service. Rather, defendant points to Santana's involuntary discharge from the navy as the root cause of her predicament. Defendant argues that since Santana's military service did not affect her ability to comply with her financial obligations, the complaint fails to state a claim for relief under the SCRA and should be dismissed. Not so.

In our view, the complaint hits all the right targets to state a plausible claim for relief under the SCRA. With respect to the interest rate ceiling, the statute merely requires a plaintiff to plead that 1) the debt was incurred prior to entry into active service, and that 2) the creditor is given written notice and a copy of the military orders calling the servicemember into active duty within 180 days of the servicemember's release from service. <u>See</u> 50 U.S.C. app. § 527. The complaint states that the debt was incurred in 1991, prior to her entry into active service in 1994. The complaint also

arguably meets the second requirement. (See Compl. at ¶ 27). The SCRA requires similar pleadings, which the complaint satisfies, to engage the anticipatory relief provision. See 50 U.S.C. app. § 591.

However, both sections provide for a measure of creditor protection by giving a court ample discretion in granting relief. Specifically, a court may excuse a creditor from complying with the interest rate reduction "if, *in the opinion of the court*, the ability of the servicemember to pay interest upon the obligation or liability at a rate in excess of 6 percent per year is not materially affected by reason of the servicemember's military service." Id. at § 527(c) (emphasis added). Similarly, a court *may* grant anticipatory relief in the form of a stay if it finds that the servicemember's ability to comply with his obligations "has been materially affected by reason of military service." Id. at § 591(b). Furthermore, anticipatory relief may only be granted "after appropriate notice *and hearing*." Id. at § 591(b) (emphasis added).

Though the complaint pleads plausible SCRA violations, the Court may not grant relief until it determines whether Santana's ability to comply with her financial obligations was materially affected by her military service. See 50 U.S.C. app. § 591(b). In the complaint, "Santana affirmatively asserts that her

ability to comply with the terms of her mortgage obligations [...] have been] materially affected by reason of her military service." (Compl. at ¶ 34). Nevertheless, this is but a legal conclusion not entitled to the presumption of truth. <u>Ocasio-Hernández</u>, 640 F.3d at 12. If anything, the complaint shows that Santana's ability to make good on her loan with BPPR was *enhanced* by reason of her military service. Rather than having her life interrupted by a call into service, Santana actively chose the military as her career. (<u>See</u> Compl. ¶¶ 12-15). In fact, after entering active service, Santana was able to acquire a second property in Norfolk, Virginia. (Compl. at ¶ 20).

However, this determination is naturally fact-intensive, and, at least with respect to the anticipatory relief provision, requires a hearing. Given the notable lack of guidance from the federal courts in this matter,[2] and that the SCRA should be construed in favor of the serviceman, the Court rules as follows: First, BPPR's motion to dismiss is hereby DENIED; second, the case shall be REFERRED to a magistrate judge for a hearing to determine whether Santana's ability to comply with her obligations to BPPR was affected *by reason of her military*

---

[2] In support of their motion, defendant cites several state law cases decided shortly after World War II, as well as several guides relating to the application of the SCRA. A cursory search reveals very few federal cases that address these issues. Most of these have been decided by district-level courts and are unreported.

**CIVIL NO.** 11-1627(JAG)                                                                9

*service*. The magistrate judge shall issue a Report and Recommendation on the matter.

Damages, Costs and Attorney's Fees

Plaintiff also prays for monetary and punitive damages, as well as the imposition of costs and attorney's fees. 50 U.S.C. app. § 597. A person "aggrieved by a violation of this Act" may recover monetary damages, costs and reasonable attorney's fees in a civil action. Id. at § 597(a). Defendant argues that the complaint does not allege facts with respect to this particular subsection, and thus must be dismissed. This argument is puzzling, given that the granting of damages and fees under this section is dependent on whether plaintiff suffered a violation of the SCRA. At this juncture, all this requires of plaintiff is that her complaint states a plausible claim for relief under the Act. We found so above. Dismissal of these claims is therefore improper.

## CONCLUSION

Defendant's motion to dismiss is DENIED. This case is hereby referred to a magistrate judge for a hearing to determine whether Santana's ability to comply with her obligations to BPPR was affected by reason of her military service.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of June, 2012.

                                              <u>S/ Jay A. Garcia-Gregory</u>
                                                JAY A. GARCIA-GREGORY
                                            United States District Judge