IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CELESTE C. SANTANA-ARCHIVALD,

**Plaintiff,**

v.

**CIVIL NO.** 11-1627(JAG)

BANCO POPULAR DE PUERTO RICO, *et al.*,

**Defendant.**

OPINION AND ORDER

Garcia-Gregory, D.J.

Before the Court is a Motion for Partial Reconsideration under Fed. R. Civ. P. 59 filed by Banco Popular de Puerto Rico ("BPPR" or "Defendant"). (Docket No. 66). Plaintiff has failed to file any response or objection to Defendant's Motion. For the reasons stated below, the Motion for Reconsideration is hereby **GRANTED**.

Since the factual background of this case was already discussed in the Opinion and Order granting in part Defendant's Motion for Summary Judgment, (Docket No. 64), the Court will proceed directly to the legal analysis and discussion of the pending motion.

**DISCUSSION**

The only remaining allegation in this case arises from an alert notification that Celeste Santana-Archivald ("Plaintiff") received on January 11, 2014. On said date, Plaintiff avers via affidavit, that she received "an alert notification about a key change posted on her credit report from Credit Secure® from American Express because BPPR furnished an adverse credit report to the Credit Bureau on her." (PSUF at ¶ 30). Despite the fact that Plaintiff did not miss any payments and paid off the balance remaining on her BPPR mortgage by December 10, 2013, BPPR reported to the Credit Bureau on January 11, 2014, that "[n]o more than two payments [were] past due." (PSUF at ¶ 31). Plaintiff contends that this adverse credit report supports a claim of retaliation in violation of § 518 of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. App. § 518. (PSUF at ¶ 32).

Section 518 of the SCRA provides in relevant part that an application by a servicemember for relief under the SCRA "shall not itself (without regard to other considerations) provide a basis for . . . (3) An adverse report relating to the creditworthiness of the servicemember by or to a person engaged in the practice of assembling or evaluating consumer credit information." A violation of this anti-retaliation provision requires adverse action by the creditor solely because of the servicemember's claim for relief. See Murphy v. Bank of America, 2012 WL 5954144 at *3 (N.D. Ala. Nov. 28, 2012).

In its Motion for Partial Reconsideration, Defendant points out that Plaintiff has failed to produce the alert notification and the adverse credit report that she claims to give rise to her claim under § 518. (Docket No. 66). Defendant argues that in the absence of such evidence, Plaintiff has failed to demonstrate that a negative credit report was issued by BPPR. As a result, BPPR asks this Court to summarily dismiss this last allegation since Defendant could not have violated § 518 if there is no evidence that a negative credit report was issued in the first place.

BPPR's position as to this point is misguided and contradictory to the say the least. Even if there is no copy of the notification or the report, BPPR has confirmed that a negative credit report was actually filed. For example, in response to Plaintiff's allegations that a negative credit report was issued, a BPPR official stated via affidavit that "the internal system needed an adjustment to reflect the payments of mortgages" for the period of December 2013. (Docket No. 54; Ex. 2 ¶ 13). The official also stated that BPPR corrected an erroneous report by informing the credit agencies and sending letters to the Plaintiff with information of the correction. Id. at ¶ 14. Consequently, it is pointless for BPPR to argue that Plaintiff has failed to establish that a negative

credit report was issued if BPPR's own position essentially concedes this fact.

Nonetheless, the fact that an adverse credit report was issued does not mean that BPPR in fact violated § 518. This section only prohibits the issuing of an adverse credit report in response to a servicemember's application for, or receipt of, a stay, postponement, or suspension of a civil obligation. See e.g., Murphy, 2012 WL 5954144; Koenig v. Waukesha State Bank, 2006 WL 2334841, at *7 (E.D. Wis. Aug. 10, 2006); Rodriguez v. American Express, 2006 WL 908613, at *7 (E.D. Cal. Apr. 7, 2006).

Plaintiffs' remaining allegation, however, is at the very best conclusory. See Mendez-Aponte v. Bonilla, 645 F.3d 60, 68 (1st Cir. 2011) (stating that courts must ignore speculation and conclusory allegations at the summary judgment stage). The allegation lacks any evidentiary support indicating that BPPR ever submitted an adverse credit report that was retaliatory in nature or otherwise improper. Plaintiff does not dispute BPPR's evidence that the bank's internal system needed an adjustment that would have prevented the issuing of the erroneous credit report. Furthermore, the record clearly indicates that BPPR quickly corrected the Plaintiff's credit information and notified the Plaintiff of said correction on February 3, 2014, that is, less than a month after Plaintiff received the alert

notification of the change in her credit report. Docket No. 54; Ex. 2 ¶ 14).

It follows from the record that Plaintiff's allegation of retaliation is "inherently incredible" considering that: (1) it is undisputed that BPPR's internal system needed adjustments; and (2) BPPR quickly corrected Plaintiff's credit information. See Ricci v. Alternative Energy Inc., 211 F.3d 157, 161 (1st Cir. 2000) ("Evidence presented on summary judgment may be 'inherently incredible' and so disregarded.") (citation omitted); Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987) (stating that courts need not resolve conflicts in favor of the nonmoving party when the evidence presented is "inherently incredible"). Therefore, to presume or infer from these facts that BPPR retaliated against Plaintiff for seeking relief under the SCRA is not only far-fetched, but also unreasonable. To hold otherwise would be to extrapolate a genuine issue of material fact from an unsupported conclusory allegation.

Furthermore, Plaintiff has failed to prove that she suffered any damages as a result of the adverse credit report. There is no evidence in the record, for example, that a financial institution denied a loan application as a result of the changes in her credit report. Moreover, since BPPR corrected the erroneous report shortly after Plaintiff received the alert

notification, it is unlikely that Plaintiff suffered any harm, much less harm as a result of retaliatory conduct. In the absence of such evidence, it is not surprising that Plaintiff has opted for not responding to BPPR's Motion for Reconsideration.

In conclusion, this Court finds upon reconsideration that there is no genuine issue of material fact precluding the entry of summary judgment. Since there is no evidence of actual damages or a retaliatory conduct, it follows that Plaintiff has failed to meet its burden of proof at the summary judgment stage.

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Defendant's Motion for Reconsideration. (Docket No. 66). Plaintiff's remaining claim under § 518 is dismissed WITH PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 17th day of December, 2014.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge